590 P.2d 973 (1978)
Donald C. HATCH, Clive Sprouse, and Gary Sprouse, Plaintiffs-Appellees,
v.
Vernon E. WAGNER, and Ellen Veyon Wagner, Defendants-Appellants, and
Jarrell M. Massey, and Opal R. Massey, Defendants.
No. 77-587.
Colorado Court of Appeals, Division I.
May 4, 1978.
Rehearing Denied May 25, 1978.
Certiorari Denied February 13, 1978.
*974 Cooley & Benner, Meeker, D. J. Dufford, Graham & Dufford, Grand Junction, for plaintiffs-appellees.
Timothy W. Hasler, Daniel W. Dean, Fort Collins, for defendants-appellants.
PIERCE, Judge.
Defendants, Vernon and Ellen Wagner, appeal the judgment of the trial court dismissing their counterclaims and ordering them to perform in accordance with a stipulation which they had entered into with plaintiffs, Donald Hatch, Clive Sprouse, and Gary Sprouse. We affirm.
In February 1974, the Wagners and Clive Sprouse executed an agreement under which the Wagners pledged some of their cattle, horses, and farm equipment to Sprouse to secure payment of funds which Sprouse advanced them. Sprouse subsequently assigned a portion of his rights under this February agreement to plaintiff Hatch.
In May of 1975, plaintiffs brought this action based on the February agreement, seeking to enforce their security interests against the collateral. The defendants answered, and defendant Vernon Wagner filed four counterclaims against plaintiff Clive Sprouse. The trial court dismissed three of the four counterclaims, and Wagner appealed those dismissals.
In November of 1975, while the appeal of the dismissals was pending, the parties entered into the first of two stipulations purporting to settle their dispute. Under this November stipulation, Sprouse agreed to reduce the amount of the debt, in exchange for the Wagners' agreement to let Sprouse sell a portion of the subject cattle and apply the proceeds to the reduced debt. The Wagners also agreed to obtain bids for the sale of a portion of the remaining cattle, with Sprouse having the first option to meet the bids. Finally, the parties agreed that the complaint would be dismissed, together with the appeal on the counterclaims. The trial court approved the stipulation, and retained jurisdiction to enforce it.
A dispute soon arose over whether the Wagners were complying with the stipulation, and the parties began negotiations which led to the execution of an amended stipulation in December 1975. By this amendment, Sprouse was to take all of the cattle to Utah in order to feed them, and the Wagners were to retain possession of the horses and farm equipment. Bills of sale transferring all of the subject collateral to Sprouse were to be executed by the Wagners and held by the clerk of the court. The Wagners were given an option to repurchase the collateral by paying the reduced debt. If the option was not exercised by May 15, 1976, the clerk would be directed to surrender the documents of transfer to Sprouse.
This amended stipulation was again approved by the trial court, though the time for payment was subsequently extended, *975 with court approval, from May 15, to May 21, 1976.
On May 21, a few hours before the time for payment was to run out, the Wagners filed a Petition for Arrangement under Chapter 11 of the Bankruptcy Act in United States District Court. Under Bankruptcy Rule 11-44(a), the filing triggered an automatic stay of all state court proceedings, and the state clerk was therefore unable to deliver the documents of transfer. Sprouse responded by filing a complaint under Bankruptcy Rule 11-44(d), attacking the stay and requesting relief from its operation.
After a hearing, the Bankruptcy Court made the following findings of fact, among others:
1. "The issue of whether the Stipulation, as amended, between Sprouse and the Wagners is unconscionable is irrelevant to this proceeding. Even if such issue were relevant, there is no evidence that the Stipulation, as amended, was unconscionable. In fact, it appears that the Stipulation was the result of an effort to allow the Wagners to retain their interest in the cattle, horses, and equipment.
2. "The evidence does not disclose that the Wagners entered into the Stipulation, as amended, to keep the cattle from starving or that the Wagners were coerced into signing the Stipulation, as amended.
3. "The rights of Sprouse and the Wagners were fully and finally settled by the January Order. This Court cannot upset that final order.
4. "The cattle, horses, and equipment, which is the subject of the Complaint filed herein, are Sprouse's. The Wagners have no ownership rights in such property. Consequently, such property is not subject to the jurisdiction of this Court.
5. "Even if the Court had jurisdiction over the cattle, horses, and equipment, it would defer its jurisdiction to the District Court in and for the County of Rio Blanco, State of Colorado, since that Court has jurisdiction over the res and indicia of ownership, and because the disputes between Sprouse and the Wagners can best be resolved in that Court."
Accordingly, the court granted Sprouse relief from the automatic stay, permitting the state action to "proceed according to the usual course of practice."
Once the stay was lifted, the trial court directed the clerk to deliver the documents of transfer to Sprouse, and this delivery was accomplished on June 21, 1976. However, the Wagners refused to tender the horses and farm equipment. Sprouse then moved for an order requiring the delivery of the property, and also filed a motion to reform the bill of sale to correct some errors in the description of the subject horses' registration numbers. The Wagners responded by filing a motion requesting leave to file their original answer and counterclaims together with a motion seeking relief from the stipulation.
After a hearing, the trial court entered an order granting Sprouse's motion for reformation, denying the Wagners' motions, and ordering the delivery of the property in accordance with the stipulation. It is this order which the Wagners appeal here.

I.
The Wagners' principal argument is that the trial court erred in refusing to stay the proceedings for 60 days pursuant to 11 U.S.C. § 29(e) (1970). This section gives a trustee in bankruptcy a 60 day grace period within which he may perform any act required of or permitted to the bankrupt. The Wagners argue that since the debtor in possession in the Chapter 11 analog of the trustee in bankruptcy, and since the "straight" bankruptcy provisions apply to Chapter 11 so long as they are consistent with that chapter, 11 U.S.C. § 702 (1970), they should have been permitted to continue their arrangement without state court interference. We disagree.
Chapter 11 itself, in Rule 11-44, provides a complete mechanism for the granting and termination of stays. Since a potentially indefinite stay is automatically granted under *976 Rule 11-44(a), the 60 day period for straight bankruptcy has no application to Chapter 11 proceedings. See In re Thomas J. Grosso Investment, Inc., 457 F.2d 168 (9th Cir. 1972). In fact, to the extent that the Bankruptcy Court found that it had no jurisdiction over the property, it had no choice but to terminate the automatic stay. In re Cuba Electric & Furniture Corp., 430 F.Supp. 689 (D.P.R.1977).
Despite the Wagners' characterizations to the contrary, the Bankruptcy Court's order lifting the stay was clear and unambiguous. In the court's own words, the state action was to "proceed according to the usual course of practice." Essentially, by arguing that the Bankruptcy Court did not mean what it said, the Wagners are attempting to attack collaterally the federal court's findings in this state appeal, an attempt we will not countenance.

II.
The Wagners also contend that the trial court erred in permitting Sprouse to reform the bill of sale. They cite Welsh v. Noyes, 10 Colo. 133, 14 P. 317 (1887), for the proposition that the correct remedy should have been cancellation of the entire stipulation.
However, Welsh involved an error which went to the heart of the agreement, and which put the parties' "meeting of the minds" in doubt. Scrivener's errors, on the other hand, can be corrected by reformation when the true intent of the parties is otherwise apparent. See, e. g., Atchison v. City of Englewood, Colo., 568 P.2d 13 (1977); Gullion v. Plymale, 168 Colo. 245, 450 P.2d 650 (1969); Fenimore v. Stauder, 34 Colo. App. 309, 527 P.2d 943 (1974). Cf. Segelke v. Kilmer, 145 Colo. 538, 360 P.2d 423 (1961).
Here, it is apparent that the errors involved were only transcriptional mistakes in the horses' registration numbers, and did not represent an underlying disagreement over the identity of the collateral. The Wagners offered no evidence to support the contrary conclusion, and, under these circumstances, the reformation was proper. See Gullion v. Plymale, supra.

III.
The Wagners argue that the trial court erred in excluding evidence of acts preceding the execution of the November stipulation. We disagree. The November stipulation was a complete and final settlement of the dispute between the parties, and evidence extrinsic to the stipulation is not admissible to contradict it or to add to its terms. Regan v. Customcraft Homes, Inc., 170 Colo. 562, 463 P.2d 463 (1970). The only material ambiguity in the stipulation involved the question of the incorrect registration numbers, and the trial court correctly admitted parol evidence on this question. Regan, supra.
Nor do we agree that, because reformation is an equitable remedy, the evidence of prior activity was admissible to show Sprouse's "unclean hands." This argument presupposes that Sprouse's unclean hands were not washed by the execution of the stipulations. Under such an argument, the doctrine of "unclean hands" would obliterate great portions of the parol evidence rule. The rule cannot be so easily avoided by the ruse of translating an evidentiary argument into the language of equity.

IV.
Wagner also contends that the trial court erred in issuing its order without the stipulation having been entered into evidence. However, the stipulation was part of the trial court's file on this matter, and the court may take judicial notice of documents in its files without formally entering them into the record as evidence. Torbit v. Griffith, ___ Colo.App. ___, 550 P.2d 350 (1976); Sakal v. Donnelly, 30 Colo.App. 384, 494 P.2d 1316 (1972).

V.
Finally, Wagner argues that the trial court erred in finding Sprouse had not breached the stipulation. This issue is a question of fact, and the trial court's ruling, based as it was on conflicting evidence, will *977 not be set aside. Broncucia v. McGee, 173 Colo. 22, 475 P.2d 336 (1970).
We have considered the Wagner's other assignments of error and find them to be without merit.
Judgment affirmed.
COYTE and ENOCH, JJ., concur.